## H. L. A. HOLMAN v. THE STATE.

### No. 1628. Decided May 31, 1899.

**1. Unlawful Assembly—Evidence Insufficient.**

On a trial for engaging in an unlawful assembly with intent to interfere with the ocupation of another, the evidence is insufficient to support a conviction where there is no testimony, outside that of an accomplice, tending to connect defendant with the commission of the offense.

**2. Same—Accomplice Testimony—Corroboration.**

On a trial for unlawful assembly, which, the accomplice testimony showed, consisted of an assembly or meeting for the purpose of running Mexican laborers out of the neighborhood, and to post notices on the premises of certain persons employing

Mexicans, at which meeting defendant was present; Held, the bare fact that "White Cap notices" were posted, without any evidence as to the identity of the party or parties posting them, is not a sufficient corroboration of the accomplice testimony as to the object and purpose of the unlawful assembly.

APPEAL from the County County of Atascosa. Tried below before Hon. N. R. WALLACE, County Judge.

Appeal from a conviction for engaging in an unlawful assembly; penalty, a fine of $200.

The facts in evidence, that is, the important ones pertaining to the unlawful assembly, are summarized and commented upon in the able brief of Robt. A. John, the Assistant Attorney-General, viz.:

The State, by the testimony of Lem Spears and Ed Forrest, who were confessedly accomplices and coconspirators, showed the existence of a secret organization, oath-bound, with the death penalty attached, with secret words, signs, and all the usual features of a secret organization; and they further show that appellant was a member of the same. The purpose of this organization is made clear by the testimony, in which the grand mogul, or head chief, as he was called, in a speech made at the meeting on April 30th in the pasture of Garret Rutledge, in Atascosa County, prefaced his remarks by a statement that they were all violators of the law, and stated that they had met for the purpose of arranging ways and means to run the Mexican laborers out of the country, and suggested the preparation of notices, signed "White-Cap," warning farmers to get rid of this kind of labor. It was further suggested at said meeting that dynamite be purchased, and that if the farmers did not obey the warnings given that they would use severe measures, such as whipping the employers and employes. The speaker, a Mr. James, stated that they had better sleep on their arms, as there was no telling when they might be called upon to respond to the call of their chief of chiefs, the said James being that individual. It was shown that during the talk of this chief of chiefs, appellant was not only present and in hearing, but was one of the applauders of the speaker, and stated that he indorsed everything he said, and suggested the use of what he called Greek fire in lieu of dynamite, and stated not only the ingredients of this deadly explosive but its effect, as having, among other things, such furious inflammable properties that when once ignited "all hell could not put it out." Appellant, who appeared to be the head of the San Antonio branch of this "industrial army," stated that if it was necessary he would call his clan out and would engage them in the pastime of destroying national banks and buildings, from the largest to the smallest, and would also gratify his brethren of Atascosa County by sending to them "grub in sufficient quantities to last them a good while." The writer can not refrain at this place from calling the court's attention to the picturesque surroundings of this modern Guy Fawkes. Unconsciously the statement of facts adds extra dramatic force to the scene. It says: "During the talk of the defendant all present were gathered closely around him, some sitting down and some standing. The night was dark and cloudy, though the moon

was up. No lights were burning other than the striking of a match occasionally by some smoker." The place was in a secluded part of a pasture, and surrounding this "industrial army" thus congregated at the dead hours of the night were armed sentinels, with instructions to let no one pass but such as had the sign and the password. Certainly a fitting locus in quo for the midnight conspiracy, and from his classic knowledge of "Greek fire" and other inflammable utterances of appellant, he certainly was an ideal master spirit of the gathering there. The existence of this society is corroborated by parties who were not members of the organization,—as shown by the testimony of Marsalis Spears, who was approached in the same manner as others chosen for the mysteries of this organization, and was invited to join, but declined. The purpose of the organization, as shown by this witness, was unlawful; and he certainly was not a conspirator nor an accomplice. He stated that Moore, who approached him, soliciting his joining the order, upon witness declining the honor, said "he had better join, as they would make him do so when they got ready," and also informed witness, "that they [the order] would also take the White House, blow up the national banks, and run, things to suit themselves." And further stated, that at this time there was some talk of the Mexicans uprising, as it was about the beginning of the Spanish-American war.

Thus the existence of a secret organization is shown by parties who were members of it, participating in its rites and ceremonies, together with that of an alien, or what might be termed a "barbarian" (being without the fold of this benign institution), who corroborates the testimony of those witnesses who were actually members. The presence of the defendant at the meeting in which the conspiracy was formed, as alleged, is shown not only by those members who were present and testified positively that he was there, and testified as to his participancy, as heretofore set out, but the testimony of these accomplices is corroborated by the witness LeRoy Williams, who was not a member of the organization. Said witness says that appellant left his grandfather's house, Billie Gates', on the evening of April 30, 1898, with the declared purpose of going to the place where the meeting of the society was held, and where the conspiracy was formed; and that, although appellant had an appointment to speak at Argua Negra schoolhouse on the night when the conspiracy was formed, as shown by the testimony of the conspirators, he, without being excused, was absent from the meeting, and although a crowd was assembled to listen to appellant, he disappointed them,—palpably because he was at that time lecturing the "industrial army" on the civilizing properties of his Greek fire. Appellant's connection with the fraternity is thus shown by evidence of accomplices, properly corroborated.

No briefs for appellant have come to the hands of the Reporter.

HENDERSON, JUDGE.—Appellant was convicted, under article 309 of the Penal Code, for engaging in an unlawful assembly, and prosecutes this appeal.

Motion was made in arrest of judgment, on the ground that the indictment did not sufficiently charge the offense. We have examined the same carefully, and, in our opinion, it does charge an offense. It is different from the indictment in the Bradford Case, post, p. 632, which is a companion case to this, in that it does charge that the prosecutor, Louis H. Ernst, was then and there engaged in running a certain farm, and was then and there engaged in employing Mexican laborers on his farm, etc.

The only question that requires to be considered is the sufficiency of the evidence. We have examined the record carefully in this respect, and in our opinion it fails to make out a case against appellant, because there is no evidence, outside of the accomplice testimony, tending to connect appellant with the commission of the said offense. The accomplices gave a detailed account of the meeting, and showed that its purpose was illegal, as alleged in the indictment, and that appellant attended said meeting, and there is some testimony, outside of the accomplices', tending to show that appellant was present at said meeting. But we fail to find in the record, outside of the accomplices' testimony, any evidence tending to show the character of the meeting, that it was for the illegal purpose expressed in the indictment. This meeting was on the 30th of April, 1898, and, according to the accomplices, one of the purposes of said meeting was to run the Mexican laborers out of that neighborhood, and to that end to post notices on the premises of certain persons employing such labor on the 15th of May following. It is contended that the fact that such notices were posted on the premises of certain persons, among them that of the prosecutor, on the 15th of May, is corroborative testimony; but we can not so regard it. No witness testifies to seeing these notices posted, and there is absolutely no testimony tending to show that notices were posted by the parties who attended said meeting and in pursuance thereof. The bare fact that "White-Cap notices" were posted on certain premises, without any testimony as to who posted said notices, we can not regard as evidence tending to show that said notices were posted by the parties who attended said meeting, and in that respect corroborate the accomplices as to the purposes for which said meeting was held. And, in the absence of some proof, we can not presume that these notices were posted by said parties, and that this presumption supplements the proof made by the accomplices. Because, in our opinion, the evidence does not sustain the conviction, the judgment is reversed and the cause remanded.

*Reversed and remanded.*